IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN UMSTEAD,#A1006120 ) | CIV. NO. 06-00229 SOM/BMK |
| ) | |
|       Plaintiff, ) | |
| ) | |
|  vs. ) | ORDER OF DISMISSAL PURSUANT |
| ) | TO 28 U.S.C. § 1915 AND ORDER |
| JOHN MANUMELEUMA, NOLAN P. ) | DENYING IN FORMA PAUPERIS |
| ESPINDA ) | APPLICATION |
| ) | |
|       Defendants. ) | |
| _____ ) | |

**ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915
AND ORDER DENYING IN FORMA PAUPERIS APPLICATION**

On April 25, 2006, *pro se* Plaintiff John Umstead filed this prisoner civil rights action. On April 28, 2006, this Court dismissed Umstead's original Complaint for failure to state a claim and denied his request to proceed *in forma pauperis* ("IFP"). (*See* Docket No. 5. "Order Dismissing Case" entered May 1, 2006.) Umstead was given leave to amend his Complaint to cure the deficiencies, if possible, and to file another, fully completed IFP application.

On July 13, 2006, Umstead submitted his Amended Complaint and second *in forma pauperis* application. Although Umstead alleged jurisdiction under 42 U.S.C. § 1983 in his original Complaint, in the Amended Complaint he has only checked the box marked "Other," and fails to otherwise explain the basis for this court's jurisdiction. The Amended Complaint again alleges that Defendants violated unspecified civil rights by neglecting to

inform Umstead that his sister had called the prison on January 15, 2006, to tell him that his father had died. Umstead also alleges two new claims: that prison officials withheld his mail from the court to prevent him from filing his Amended Complaint, and denied him access to the court by refusing him permission to contact a lawyer by telephone to represent him in this action and by refusing to allow him to telephone the court.

Umstead again names John Manumeleuma, Chief of Security at Oahu Community Correctional Center ("OCCC"), and Nolan P. Espinda, OCCC Warden, as defendants (collectively "Defendants"). Both Defendants are named in their official capacities only. Umstead seeks five million dollars in damages.

For the following reasons, the Court dismisses Umstead's Amended Complaint for failure to state a claim and denies his second IFP application.

**LEGAL STANDARD**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.;* 28 U.S.C. § 1915A(b)(1), (2).

The court must construe *pro se* pleadings liberally and afford the *pro se* litigant the benefit of any doubt. *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Unless it is absolutely clear that no amendment can cure the defect . . . , a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (*en banc*).

**DISCUSSION**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

I.  Umstead's Second In Forma Pauperis Application is Denied.

Umstead's first IFP application was denied as moot because the Court dismissed his Complaint for failure to state a claim. It was also incomplete, as Umstead failed to have prison

3

officials complete and sign the certified statement of the six-month transaction history of his account and verify the amount in his prison trust account.

The court informed Umstead that if he chose to amend his complaint and to submit a second IFP application, the second application had to be complete and include this signed statement from prison officials.  (*See* Docket No.7, "Order Vacating Judgment and Granting Extension of Time to File Amended Complaint and Completed Application to Proceed In Forma Pauperis" at 2, entered Jun. 30, 2006.)

Umstead's second IFP application is also incomplete. Umstead has failed to sign the consent to collection of fees from his account, failed to have prison officials sign the certificate of status of his trust account, and failed to provide copies of his account activity for the past six months.  Accordingly, Umstead's second IFP application is DENIED.

Umstead is notified that parties filing actions in the United States district court are required to pay filing fees. *See* 28 U.S.C. § 1914(a).  An action may proceed without the payment of filing fees only upon granting of *in forma pauperis* status.  *See* 28 U.S.C. § 1915.  Umstead is hereby ORDERED either to pay the $350.00 filing fee for this action, or to submit a sufficient IFP application.  Failure to pay the statutory filing fee or to file a sufficient IFP application within THIRTY DAYS of

4

this order will result in dismissal of this action. *See Olivares v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995) (district court has authority to dismiss without prejudice prisoner complaint for failure to pay partial filing fee); *In re Perroton*, 958 F.2d 889 (9th Cir. 1992) (affirming dismissal of appeal of pro se litigant for failure to pay required filing fees).

II.  <u>The Amended Complaint Fails to State a Claim.</u>

Umstead states that his sister called the prison on January 15, 2006, to tell him that his father had died, but that no one at the prison told him about her call.  It is unclear whether his sister told prison officials of Umstead's father's death, or if she simply asked to speak with Umstead to inform him. Approximately two and a half months later, on March 22, 2006, Umstead called his father's home to wish him happy birthday and found out that his father had died.  Umstead alleges that this claim is based on "neglect" and labels it as involving Mail, Access to the court, and "Other" issues.  (Compl. "Count I.")

Umstead next states that when the court mailed him a new complaint and IFP form, on June 30, 2006, the prison officials "[took] my mail to stop me from doing this complaint." (*Id.* "Count II.")

Last, Umstead vaguely alleges that prison officials denied him access to the court when they refused to allow him to call

the court or to call lawyers to represent him in this action. (*Id.* "Count III.")

> A.  Official Capacity Defendants are Entitled to Eleventh Amendment Immunity and Are Not Persons Within the Meaning of Section 1983.

In both his original and Amended Complaints Umstead names Defendants solely in their official capacities and seeks only monetary damages.  This court lacks jurisdiction over Umstead's claims for damages against Defendants in their official capacities.  Those claims are barred by the Eleventh Amendment, which "prohibits federal courts from hearing suits brought against an unconsenting state."  *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 267-68 (1997).  Defendants, as state prison officials, are immune from suit for damages in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

Moreover, although he neglected to specify the basis of this court's jurisdiction, it appears that Umstead brings this action pursuant to 42 U.S.C. § 1983.  It is firmly established that neither a state nor a state employee acting in an official capacity is considered a "person" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66,(1989); *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).

Defendants, as state employees, are not subject to suit under § 1983 for damages in their official capacities.

Accordingly, Defendants are dismissed in their official capacities for all claims for damages against them. Umstead may not reassert claims dismissed here, as they are barred by the Eleventh Amendment and not cognizable under § 1983. That is, Umstead may not reassert damage claims against Defendants in their official capacities.

The Court notes that, while state officials acting in their official capacities may not be sued in federal court for damages or violations of state law, they may be sued in federal court for prospective injunctive relief sought in connection with alleged violations of federal law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839. Umstead, however, seeks only monetary damages in this action. It is also unclear what type of prospective injunctive relief Umstead could assert in connection with his claims, making Defendants amenable to suit in their official capacities for such relief.[1]

---

[1] Moreover, Umstead states in his June 26, 2006, letter to the court that he will be released from OCCC on July 26, 2006, which would render his claims for injunctive relief against OCCC moot. *See Cooney v. C.R. Edwards*, 971 F.2d 345, 346 (9th Cir. 1992) ("Because Cooney is no longer incarcerated, his claims for injunctive relief are either moot or not ripe."); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Because [Johnson] has demonstrated no reasonable expectation of returning to [the correction center], his claims for injunctive relief relating to

B. Umstead Fails to State a Claim Against Defendants
Espinda and Manumeleuma in Their Individual Capacities.

As noted above, Umstead only named Defendants in their official capacities. It is unclear if this was inadvertent or intentional. When it is unclear whether a defendant is sued in an official or an individual capacity, a court should examine the nature of the proceedings to determine the capacity in which that defendant is sued. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). When the plaintiff is seeking damages, as here, there is a strong presumption that the defendants are sued in their personal capacities because an official-capacity suit for damages would be barred. *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999).

The court construes Umstead's Amended Complaint as also naming Defendants in their individual capacities. While state officials may be sued in their individual capacities for damages, Umstead's claims against Defendants also fail to state a claim. First, there is no *respondeat superior* liability under 42 U.S.C. § 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002).

---

[the correction center] are moot."); *Darring v. Kincheloe,* 793 F.2d 874, 875-76 (9th Cir. 1985) (request for injunctive relief moot because prisoner was transferred to a new prison, and there was "neither a 'reasonable expectation' nor 'demonstrated probability'" that he would be returned to the original prison).

Second, to state a civil rights claim against an individual defendant, a plaintiff must allege facts, not mere conclusions, showing that defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between that defendant's wrongful conduct and the alleged constitutional deprivation.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

A supervisor may be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision or control of his subordinates."  *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).  A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citations and internal quotations omitted).  However, an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."  *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

9

Umstead names Nolan Espinda, the OCCC Warden, and John Manumeleuma, the OCCC Chief of Security, as Defendants in this action. While alleging that someone at the prison failed to relay a telephone message to him, held his mail for several days, and denied his request to call the court or an attorney to represent him in this civil suit, Umstead provides no facts tying either Defendant to any of these claims.  He does not say that either Espinda or Manumeleuma answered the phone call from his sister and then deliberately withheld her message to Umstead, or that either Defendant directed other prison employees to do so.  In fact, in the original Complaint, Umstead alleges that "Sgt. Torres, ACO Tofi and ACO Rivera was there when they got the call" but makes no mention of Defendants' presence or involvement in this claim.

Nor does Umstead allege any facts tying either Defendant to his claim that his mail was tampered with or withheld, or to his allegation that he was not allowed to call the court or an attorney.  In short, he alleges no facts tying Espinda or Manumeleuma to any of the alleged violations.  Umstead has apparently named them because of their general supervisory responsibilities at OCCC.  This is insufficient to state a claim against them in their individual capacities. Accordingly, Defendants Espinda and Manumeleuma are dismissed in their individual capacities, although Umstead is given leave to amend,

10

if possible, to show their personal involvement in the matters he is complaining about.

    C.    <u>Count I is Dismissed for Failure to State a Claim.</u>

Count I, as amended, still fails to allege a viable cause of action under § 1983.  Umstead fails to allege what privilege or immunity protected by the Constitution or laws of the United States was violated when Defendants allegedly failed to notify him of a telephone call from his sister.  Assuming that he is claiming a violation of the Eighth Amendment, his allegation that prison officials neglected to give him a phone message from his sister on one occasion, or failed to notify him of his father's death, is insufficient to demonstrate that prison officials acted with deliberate indifference.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

The Eighth Amendment protects prisoners from various types of harm.  *See Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) (noting that the Eighth Amendment not only prohibits prison officials from using excessive force; it also imposes duties to provide humane conditions of confinement, such as ensuring that inmates receive adequate food, clothing, and medical care).  To state a cognizable claim, however, a prisoner must allege facts that, if proven, would satisfy two requirements--first, the alleged deprivation of rights must be sufficiently serious; second, the prison official must have acted with a "sufficiently

culpable state a mind." *See id.* at 834.  The precise nature of these two requirements will vary depending on the context of the particular claim.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 8-10(1992).  Assuming without deciding that a prison official's failure to notify a prisoner about a family member's death can support an Eighth Amendment claim, Umstead has not alleged facts that, if proven, would establish that the defendants acted with a sufficiently culpable state of mind.  This claim is dismissed without leave to amend.

    D.   <u>Count II Fails to State A Claim.</u>

In Count II, Umstead states: "When you had sent me this stuff to send back to you they had tak[en] my mail to stop me from doing this Complaint."  (Amd. Compl. Count II, p.5.)  Umstead is apparently alleging that unnamed prison officials interfered with his June 30, 2006, mail packet from the court, which contained a blank prisoner civil rights complaint and a blank IFP application.

Prisoners enjoy a First Amendment right to send and receive mail.  *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  But a prison may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  The *Turner* standard

applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.  *See Thornburgh*, 490 U.S. at 413.

The inspection for contraband of non-legal mail does not violate a prisoner's constitutional rights.  *See Witherow*, 52 F.3d at 265-66 (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail).  Mail from the court is not considered "legal mail" and is not, therefore, subject to more careful handling than other mail. *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (prison officials may open and inspect mail to prisoner from courts outside prisoner's presence because mail from courts is not "legal mail").  Thus, OCCC prison officials had a right to inspect the June 30, 2006, mail from the curt to Umstead.

Allegations that mail delivery was delayed for an *inordinate* amount of time are sufficient to state a claim for violation of the First Amendment.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).  Allegations of isolated delay, however, or some other relatively short-term, non-content-based disruption in delivery of inmate mail are not enough to state a  First

13

Amendment claim.  *See Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974) (an isolated incident of delay generally is insufficient to raise a § 1983 claim).

Umstead's Amended Complaint was received at court on July 13, 2006, and was postmarked July 12, 2006.  If the court's June 30, 2006, packet arrived at the prison the next day, July 1, 2006, then, at most, it was withheld from Umstead for ten or eleven days, while the prison inspected the contents for contraband.  As this simply does not amount to an "inordinate" delay so as to impact the first amendment, this claim is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(a).

  E. <u>Count III Fails to State a Claim.</u>

Umstead alleges that Defendants violated his right of access to the court by refusing to allow him to telephone the court or to call an attorney to represent him in this civil action.

"Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system."  *Johnson v. California*,  207 F.3d 650, 656 (9th Cir. 2000) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Halvorsen v. Baird*, 146 F.3d, 680, 689 (9th Cir. 1998) ).  The Ninth Circuit

14

has recently defined the contours of this right "as the right to communicate with persons outside prison walls.  Use of a telephone provides a means of exercising this right."  *Valdez v. Rosenbaum*,  302 F.3d 1039, 1048 (9th Cir. 2002) (citing *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996) (no First Amendment violation because, among other reasons, the prisoner had an "alternative means of exercising [the right] because he could receive visitors and correspond with virtually anyone he wished.")).  *Valdez* concluded that the telephone restriction at issue did not violate the First Amendment because, *inter alia*, the prisoner had alternative means of communicating with persons outside the prison walls, allowing the prisoner telephone access would have required the prison to allocate additional resources, and there were no obvious, easy alternatives to the challenged telephone restriction.

    Umstead has not only been able to file his original and Amended Complaints, he has also filed two IFP applications, and written a letter to the court since he instituted this action.  He obviously has alternative means to communicate with the court and others.

    Moreover, Umstead has no need or right to telephone the court.  His IFP requests, Complaints, and letter have been received and reviewed by the court without delay.

Further, unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996). Umstead has adequate means to seek an attorney to represent him by mail. Count III is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(a).

**CONCLUSION**

    1. Umstead's *in forma pauperis* application is DENIED. He is granted thirty [30] days either to submit the $350.00 filing fee for this action, or to submit a sufficient *in forma pauperis* application.

    2. Claims for damages against Defendants in their official capacity are DISMISSED.

    3. Claims against Defendants Espinda and Manumeleuma in their individual capacities are DISMISSED, with leave granted to amend, if possible, in accordance with the directions in this order, within thirty [30] days.

    4. Count I is DISMISSED with prejudice for failure to state a claim.

    5. Counts II and III are DISMISSED, with leave granted to amend, if possible, in accordance with the directions in this order within thirty [30] days.

6.  The Clerk of Court is directed to send Umstead a new *in forma pauperis* application and instructions, a prisoner civil rights complaint form and instructions.  The Clerk is further directed to send a copy of this Order to Plaintiff and to Mark Bennett, the Attorney General for the State of Hawaii, at 425 Queen Street, Honolulu, HI 96813.

7.  If Umstead decides to amend his Complaint, the amended complaint should be a complete document, and it should not incorporate or refer to the original or Amended Complaint.  The document must bear the docket number assigned to this case and must be clearly labeled "Second Amended Complaint."

8.  If Umstead fails to timely (1) amend the Complaint and (2) pay the filing fee or submit a completed Application, this action will be automatically dismissed without further order of the court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii; July 26, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Umstead v. Manumeleuma, et al., Civ. No. 06-00229 SOM/BMK; ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915 AND ORDER DENYING IN FORMA PAUPERIS APPLICATION; dmp\ Screening Orders 06\Umstead 06-229 (dsm Amd C FTSC,dny IFP)